2022 IL App (1st) 192221-U

No. 1-19-2221

Order filed September 30, 2022

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 13943 |
| | ) | |
| LARRY GRAVES, | ) | Honorable |
| | ) | Angela Munari Petrone, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE GORDON delivered the judgment of the court.
Presiding Justice McBride and Justice Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm defendant's conviction for delivery of a controlled substance containing heroin and fentanyl over his contentions that the evidence was insufficient and his sentence was excessive.

¶ 2    Following a jury trial, defendant Larry Graves was found guilty of delivery of a controlled substance containing heroin and fentanyl (720 ILCS 570/401(c)(1) (West 2018)). Due to his criminal background, he was sentenced to a Class X term of 12 years in prison. On appeal, defendant contends that the State did not establish beyond a reasonable doubt that he was the

offender, or, in the alternative, that he knew the substance delivered contained fentanyl. Defendant further contends that his sentence is excessive considering his nonviolent criminal history, successful substance abuse treatment, and the cost to incarcerate him. We affirm.

¶ 3    Defendant was charged by indictment with one count of delivery of a controlled substance for unlawfully and knowingly delivering 1 gram or more, but less than 15 grams, of a substance containing heroin and fentanyl (720 ILCS 570/401(c)(1) (West 2018)).[1] The indictment further stated that the State would seek a three-year sentencing enhancement due to the presence of fentanyl. See 720 ILCS 570/401(b-1) (West 2018).

¶ 4    Chicago police officer David Parker testified that on September 2, 2018, he was working "undercover" in civilian attire and driving a "regular" vehicle. Near Cicero Avenue and Adams Street, Parker made eye contact with an individual and nodded. The man nodded back. Parker stopped, raised four fingers, and said, "give me four," meaning four packets of narcotics. When the man stated that Parker was the "police," Parker responded that if he were the police, he would "push on." The man then asked, "how many," and Parker again raised four fingers. The man told Parker to park.

¶ 5    The man entered a building, exited, and then engaged in a hand-to-hand transaction with a different man, whom Parker identified as defendant in court. Defendant approached the driver's side of the vehicle and requested money. Parker responded, "give me the dope." Defendant opened his left hand, which held four packets adorned with "Superman logos," containing white powder. Parker gave defendant $40, took the packets, and drove away. He then called his team to report a

_____

[1] Defendant was also charged with one count of possession of a controlled substance with the intent to deliver. However, the State nol-prossed that charge.

"positive transaction." After officers stopped defendant, Parker drove by and identified him. Later, at a police station, Parker gave the four packets to another officer to be inventoried. Parker did not wear a body camera when he purchased the narcotics.

¶ 6    During cross-examination, Parker acknowledged that the first man remained unidentified. Parker did not request a particular kind of narcotic or use the word fentanyl. Parker could not see exactly what was exchanged between the unidentified man and defendant. Parker never met defendant before September 2, 2018, and their interaction lasted 10 seconds. Parker believed that he was in his vehicle when he identified defendant and that defendant had a bicycle, but did not include these facts in his report. Parker bought the packets using pre-recorded funds, but when defendant was arrested three to five minutes later, no money was recovered.

¶ 7    Chicago police officer John Crotty testified that on September 2, 2018, he approached defendant, whom he identified in court, for a field interview because defendant fit a description provided by "surveillance." After Parker identified defendant via radio, defendant was arrested. A small Ziplock bag adorned with "Superman logos," containing white powder, was recovered from defendant and inventoried. Later, at a police station, Crotty inventoried the four bags Parker obtained in the undercover buy.

¶ 8    During cross-examination, Crotty testified that defendant was arrested at 10:04 a.m., after Parker confirmed defendant was the "correct person." No pre-recorded funds were recovered from defendant, who had a bicycle and lived on the block where he was arrested.

¶ 9    The State presented additional testimony from a forensic scientist establishing that the contents of the four bags Parker purchased weighed 1.4 grams and tested positive for heroin and

fentanyl. The contents of the bag recovered from defendant weighed 0.3 gram and tested positive for heroin and fentanyl.

¶ 10    The jury found defendant guilty of delivery of a controlled substance containing heroin and fentanyl.

¶ 11    Defendant filed a motion and amended motion for a new trial. The amended motion alleged that the State failed to "elicit or adduce" evidence establishing defendant's "requisite knowledge" that the substance delivered contained fentanyl and that Parker acknowledged not using that word when asking for narcotics. The trial court denied a new trial. Defendant filed a motion to reconsider, which the trial court also denied.

¶ 12    The PSI related that defendant was 48 years old on the date of the offense. He had used heroin, cocaine, and alcohol since he was a teenager, and his parents had substance abuse issues. Defendant had good relationships with his siblings and previously lived with his sister, and had "average" relationships with his four adult sons. He did not complete high school, but was previously employed and involved in his church. He was an "insulin dependent" diabetic and suffered from kidney failure, paranoia, and anxiety. The PSI was later updated to reflect that defendant successfully completed a methadone treatment program.

¶ 13    Defendant's criminal history included convictions for possession of a controlled substance in two cases, possession of a controlled substance with intent to deliver in another case, and manufacture and delivery of a controlled substance in six more cases. He also had misdemeanor convictions for manufacture and delivery of cannabis and resisting a peace officer.

¶ 14    At sentencing, the State represented that defendant was subject to a Class X term due to his criminal background, and a three-year sentence enhancement based upon the presence of

fentanyl in the narcotics delivered to Parker. The State concluded that a minimum sentence was inappropriate due to defendant's numerous felony convictions. The defense argued for a minimum sentence considering the nonviolent nature of the offense and defendant's diagnosis of kidney failure. In mitigation, defendant's half-sister testified that defendant was a "wonderful" brother who supported her education and helped to care for their siblings, including one with cerebral palsy, as well as their mother following a stroke.

¶ 15    In allocution, defendant acknowledged needing help for a 30-year heroin addiction. He further noted his supportive family and nonviolent criminal background.

¶ 16    The trial court imposed 12 years in prison, noting defendant's "numerous" narcotics convictions, as well as his relationships with his siblings, prior employment, church participation, and medical issues. The court recommended that defendant receive substance abuse treatment while incarcerated. Defendant filed a motion to reconsider sentence, which the trial court denied.

¶ 17    On appeal, defendant first contends that the State failed to prove beyond a reasonable doubt that he was the person who sold Parker narcotics. In the alternative, he contends that the State failed to establish his knowledge that the substance contained fentanyl.

¶ 18    When reviewing a challenge to the sufficiency of the evidence, "the question is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from the facts presented at trial. *McLaurin*, 2020 IL 124563, ¶22. "In reviewing the evidence, this court will not retry the defendant, nor will we

substitute our judgment for that of the trier of fact." *McLaurin*, 2020 IL 124563, ¶22. A defendant's conviction will be reversed only when the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of his guilt. *People v. Newton*, 2018 IL 122958, ¶ 24.

¶ 19    The statute concerning the offense of delivery of a controlled substance provides, in relevant part, that "it is unlawful for any person knowingly to *** deliver *** a controlled substance." 720 ILCS 570/401 (West 2018).

¶ 20    The State must prove the identity of the offender beyond a reasonable doubt. *People v. Slim*, 127 Ill. 2d 302, 307 (1989). A single witness's testimony is sufficient evidence to convict if the testimony is positive and credible. *People v. Gray*, 2017 IL 120958, ¶ 36. Contradictory testimony or minor or collateral discrepancies do not automatically render the totality of a witness's testimony incredible. *Gray,* 2017 IL 120958, ¶ 47. "Minor discrepancies in testimony affect only its weight and will not render it unworthy of belief." *Gray*, 2017 IL 120958, ¶ 47; see also *People v. Peoples*, 2015 IL App (1st) 121717, ¶ 67 (discrepancies in testimony are an issue for the trier of fact, which may accept or reject as much or as little of the witness's testimony as it likes). On appeal, this court must determine if, "in light of the record, a fact finder could reasonably accept the testimony as true beyond a reasonable doubt." *People v. Cunningham*, 212 Ill. 2d 274, 279 (2004). We do not, however, retry a defendant. *Cunningham*, 212 Ill. 2d at 279-80.

¶ 21    Viewing the evidence in the light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that defendant delivered the narcotics to Parker. Parker identified defendant at trial as the person who engaged in a hand-to-hand transaction with the first man, then approached the driver's side of Parker's vehicle and asked for money. When Parker

stated, "give me the dope," defendant opened his left hand, which held four packets adorned with Superman logos and containing white powder. Defendant exchanged those packets for $40.

¶ 22    While no pre-recorded funds were recovered when defendant was arrested, "there is no requirement that pre-recorded or marked funds used in a narcotics transaction be recovered for a conviction [for delivery of a controlled substance] to stand." *People v. Trotter*, 293 Ill. App. 3d 617, 619 (1997); see also *People v. Brown*, 388 Ill. App. 3d 104, 108-09 (2009) (affirming a conviction for delivery of a controlled substance where pre-recorded funds were not recovered, as it was "for the jury to weigh the testimony, which was corroborated in many respects, and determine its effect" on the officer's credibility). Further, while Parker's report did not note defendant's bicycle or whether Parker was in a vehicle when he identified defendant, the fact that Parker did not record every detail of the incident was not fatal to his testimony regarding his interaction with defendant. Police reports are generally abbreviated (*People v. Watkins*, 44 Ill. App. 3d 73, 76-77 (1976)), and here, Parker was cross-examined on this issue, permitting the trier of fact to assess his credibility. Given this evidence, we cannot say that no rational trier of fact could have found that defendant delivered a controlled substance to Parker. *McLaurin*, 2020 IL 124563, ¶ 22.

¶ 23    Defendant nonetheless contends that Parker's identification testimony is "undermined" when he failed to provide "any independent description" of the person who delivered the narcotics, and Crotty did not testify as to any "identifying characteristics" to establish that the person arrested matched the description of the person who delivered the narcotics to Parker.

¶ 24    When assessing identification testimony, we rely upon the factors set forth in *Neil v. Biggers*, 409 U.S. 188 (1972). Relevant factors include "the opportunity of the witness to view the

criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199-200. An eyewitness's testimony is insufficient "only where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt." *Cunningham*, 212 Ill. 2d at 280.

¶ 25    When considering the *Biggers* factors in relation to Parker's identification of defendant as the man who delivered narcotics to him, we conclude that these factors weigh in the State's favor.

¶ 26    First, Parker had the opportunity to view defendant. Parker testified that he watched as the unidentified man handed something to defendant. Then defendant approached the driver's side of Parker's vehicle, spoke to Parker, and exchanged four packets for $40. Parker observed defendant during the exchange, which occurred outside around 10 a.m. Accordingly, the first *Biggers* factor weighs in favor of Parker's identification of defendant as the person who delivered the narcotics.

¶ 27    The second factor, Parker's degree of attention, also supports a reliable identification. Parker spoke to defendant and was close enough to place something in his hand. It is reasonable to infer that Parker, participating in a planned controlled purchase of narcotics, was focused as he engaged in an undercover operation.

¶ 28    The third factor, the accuracy of a witness's prior description of the offender, is inapplicable as the record does not contain the description of the person who delivered the narcotics as related by Parker to Crotty.

¶ 29    Finally, the last two *Biggers* factors, the level of certainty demonstrated by the witness at the identification confrontation and the length of time between the crime and the identification

confrontation, further support the reliability of the identification of defendant. Parker identified defendant within minutes of the alleged narcotics transaction, and positively identified him at trial. This court has found that greater lengths of time have not rendered identifications unreliable. See *People v. Jackson*, 2016 IL App (1st) 133741, ¶ 60 (one-hour delay between narcotics transaction and positive identification); *People v. Malone*, 2012 IL App (1st) 110517, ¶ 36 (16-month delay between crime and positive identification). Accordingly, we cannot say that Parker's identification of defendant was so unreliable that there exists a reasonable doubt as to defendant's guilt. *McLaurin*, 2020 IL 124563, ¶ 22.

¶ 30    In the alternative, defendant contends he was improperly subjected to the three-year sentencing enhancement based upon the presence of fentanyl because the State failed to establish beyond a reasonable doubt that he knew the substance contained fentanyl. He concludes that the failure to prove this "element of the offense" violates the principle articulated in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that any fact other than a prior conviction which may increase the penalty for a crime beyond the proscribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. The State responds that defendant was found to have possessed both heroin and fentanyl beyond a reasonable doubt, so the three-year sentencing enhancement applied.

¶ 31    As charged, a person commits the offense of delivery of a controlled substance when he knowingly delivers a substance containing heroin and fentanyl weighing 1 gram or more but less than 15 grams. 720 ILCS 570/401(c)(1) (West 2018). Moreover, "when the substance containing the controlled substance contains any amount of fentanyl, 3 years shall be added to the term of

imprisonment imposed by the court, and the maximum sentence for the offense shall be increased by 3 years." See 720 ILCS 570/401 (b-1) (West 2018).

¶ 32    To sustain a conviction for delivery of a controlled substance, the State is required to prove that the defendant knowingly delivered a controlled substance. *People v. Nelson*, 2021 IL App (1st) 181483, ¶ 55. " '[D]elivery' " means "actual, constructive or attempted transfer of possession of a controlled substance, with or without consideration, whether or not there is an agency relationship." 720 ILCS 570/102(h) (West 2018). "Knowledge may be, and ordinarily is, proven circumstantially." *People v. Ortiz*, 196 Ill. 2d 236, 260 (2001). " 'A sale of narcotics * * * is always an intentional affirmative act, which, by its very nature, creates a reasonable inference that the seller knows the nature of the thing he is selling." *People v. Matthews*, 2017 IL App (4th) 150911, ¶ 28 (quoting *People v. Castro*, 10 Ill. App. 3d 1078, 1086 (1973)).

¶ 33    Here, defendant approached Parker and asked for money. When Parker responded, "give me the dope," defendant opened his left hand, which held four marked packets of white powder. Parker then gave defendant $40 for the packets. Forensic testing established the presence of heroin and fentanyl in those items. Thus, the evidence at trial established beyond a reasonable doubt that defendant knowingly delivered "dope" to Parker.

¶ 34    To the extent defendant argues the State had to prove beyond a reasonable doubt that he knew the substance contained fentanyl, specifically, the enhancement was based upon the presence of fentanyl, which the State proved, and applied regardless of defendant's knowledge of its presence. See, *e.g.*, *People v. Brooks*, 271 Ill. App. 3d 570, 572-75 (1995) (the State was not required to prove that the defendant knew the offense of delivery of a controlled substance was committed within 1000 feet of property owned by a public housing agency; the proximity of the

property was an enhancing factor and not an element of the offense); *People v. Pacheco*, 281 Ill. App. 3d 179, 187-88 (1996) (the State was required to prove the substantive elements of the offense of unlawful delivery of a controlled substance as well as enhancing factors including the proximity of the school, but "was not required to prove that defendant knew or was aware of the proximity or distance of the school from the area where the offense was committed"). We therefore affirm defendant's conviction for delivery of a controlled substance.

¶ 35    Defendant next contends that his 12-year Class X sentence is excessive considering his nonviolent criminal history, success in drug treatment, and the high cost of incarceration.

¶ 36    When determining a sentence, "the trial court has broad discretionary powers." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). We give substantial deference to the trial court because "the trial judge, having observed the defendant and the proceedings, is in a much better position to consider factors such as the defendant's credibility, demeanor, moral character, mentality, environment, habits, and age." *People v. Snyder*, 2011 IL 111382, ¶ 36. Accordingly, a sentence will not be disturbed absent an abuse of discretion. *Stacey*, 193 Ill. 2d at 209-10; see also *People v. Willis*, 2013 IL App (1st) 110233, ¶ 122. An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Johnson*, 347 Ill. App. 3d 570, 574 (2004).

¶ 37    The Illinois Constitution requires that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The trial court must consider "all factors in aggravation and mitigation, including, *inter alia*, the defendant's age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment, and education, as well as the nature

and circumstances of the crime and of defendant's conduct in the commission of it." *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). Where a sentence falls within the statutorily mandated guidelines, it is presumed to be proper and will be overturned only where there is an affirmative showing that the sentence departs significantly from the "spirit and purpose of the law" or is "manifestly disproportionate to the nature of the offense." *Stacey*, 193 Ill. 2d at 210. Absent some indication to the contrary, other than the sentence itself, a reviewing court presumes the trial court considered all mitigating evidence presented. *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 19. A defendant's rehabilitative potential is not entitled to greater weight than the seriousness of the offense. *People v. Reed*, 2018 IL App (1st) 160609, ¶ 62.

¶ 38    When a sentence falls within statutory guidelines, it is presumed proper. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. Here, due to his criminal background, defendant was subject to a Class X sentence of 6 to 30 years in prison. See 730 ILCS 5/5-4.5-95(b) (West 2018); 730 ILCS 5/5-4.5-25(a) (West 2018)). Moreover, defendant was subject to a three-year sentencing enhancement based on the presence of fentanyl in the controlled substance. 720 ILCS 570/401(b-1) (West 2018). Because defendant's 12-year sentence falls within the statutory guidelines, we presume it is proper. *Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 39    Notwithstanding, defendant argues that the sentence is excessive considering the nonviolent nature of the offense and his criminal background, and that he was the only person harmed by the offense. He argues that the trial court failed to "adequately" consider the mitigation in his PSI, which detailed his family's multigenerational drug abuse, as well as his potential for rehabilitation, desire to continue drug treatment, and medical issues. Defendant further argues that

the trial court "discredited" his "family ties," as detailed by his half-sister's testimony, which further supported his rehabilitative potential.

¶ 40   As mentioned, absent some indication to the contrary, other than the sentence itself, we presume the trial court properly considered all relevant mitigation evidence presented. *Sauseda*, 2016 IL App (1st) 140134, ¶ 19. That presumption may be overcome by an affirmative showing that the sentencing court failed to consider factors in mitigation. *People v. McWilliams*, 2015 IL App (1st) 130913, ¶ 27. In this case, defendant is unable to make such a showing.

¶ 41   At sentencing, the trial court considered the evidence in aggravation and mitigation, including the PSI, defendant's upbringing and criminal background, and counsel's arguments. See *People v. Babiarz*, 271 Ill. App. 3d 153, 164 (1995) ("Where the sentencing court examines a presentence report, it is presumed that the court considered the defendant's potential for rehabilitation."). The court also specifically noted in mitigation defendant's relationships with his siblings, prior employment, participation in his church, and medical issues. While recommending that defendant receive substance abuse treatment in prison, the court also noted his "numerous" prior narcotics convictions. See *People v. Brunner*, 2012 IL App (4th) 100708, ¶ 64 ("an abusive childhood, mental-health problems, and substance-abuse issues are not set forth in the list of mitigating factors in section 5-5-3.1(a)" of the Unified Code of Corrections).

¶ 42   Finally, defendant is correct that the trial court did not explicitly discuss the cost of incarcerating him.[2] See 730 ILCS 5/5-4-1(a)(3) (West 2018) (requiring the sentencing court to

---

[2] Defendant references a press release of the American Civil Liberties Union in support of this claim of sentencing error. However, this document is not included in the record on appeal, is not properly before this court, and cannot be considered. See *People v. Mehlberg*, 249 Ill. App. 3d 499, 532 (1993) ("A reviewing court must determine the issues before it on appeal solely on the basis of the record made in the trial court."); see also *Jackson v. South Holland Dodge, Inc.*, 197 Ill. 2d 39, 55 (2001) (documents not

consider the financial impact of incarceration). However, this claim is forfeited as defendant failed to raise it in the motion to reconsider sentence. See *People v. Hillier*, 237 Ill. 2d 539, 544-45 (2010) (to preserve a claim "of sentencing error, both a contemporaneous objection and a written post-sentencing motion raising the issue are required"). Moreover, he does not request plain error review. See *Hillier*, 237 Ill. 2d at 545 ("A defendant who fails to argue for plain-error review obviously cannot meet his burden of persuasion."). Even if we were to excuse defendant's procedural default, a sentencing court is not required to "detail precisely for the record the exact thought process undertaken to arrive at the ultimate sentencing decision" (*People v. Abrams*, 2015 IL App (1st) 133746, ¶ 32), or recite and assign value to each sentencing factor (*People v. Bryant*, 2016 IL App (1st) 140421, ¶ 16).

¶ 43    Essentially, defendant asks this court to reweigh the evidence and agree with his conclusion that a lesser sentence is more appropriate. This we cannot do. See *People v. Fern*, 189 Ill. 2d 48, 53 (1999) ("In considering the propriety of a sentence, the reviewing court must proceed with great caution and must not substitute its judgment for that of the trial court merely because it would have weighed the factors differently."). Based on the record before us, we cannot say the trial court's imposition of a 12-year Class X sentence was an abuse of discretion. See *People v. Crenshaw*, 2011 IL App (4th) 090908, ¶ 24 ("The balance to be struck amongst the aggravating and mitigating factors is a matter of judicial discretion that should not be disturbed absent an abuse of discretion.").

¶ 44    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

---

submitted to the circuit court are not properly a part of the record on appeal and therefore cannot be considered on appeal).

¶ 45     Affirmed.