NOTICE
Decision filed 12/03/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230719-U

NO. 5-23-0719

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 22-CF-1522 |
| | ) | |
| TERRANCE L. BRAGG, | ) | Honorable |
| | ) | Thomas E. Griffith Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE SHOLAR delivered the judgment of the court.
Justices McHaney and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The evidence was sufficient to support defendant's conviction for delivery of a controlled substance with intent to deliver containing heroin and fentanyl, and the trial court considered appropriate evidence, factors in mitigation and aggravation, and ultimately properly sentenced defendant to a sentence well within the statutory range for the offense.

¶ 2    Following a jury trial in Macon County, defendant was convicted for unlawful possession of a controlled substance with intent to deliver 3 to 15 grams of a heroin and fentanyl mixture. The trial court sentenced him to 14 years in prison, 11 years on unlawful possession plus a 3-year enhancement for the presence of fentanyl, with 1 year of mandatory supervised release. On appeal, defendant argues that this court should vacate the fentanyl sentencing enhancement. Defendant contends that the prosecution failed to prove beyond a reasonable doubt that defendant knew the substance he possessed contained fentanyl. He also contends that this court should remand for

1

resentencing where the trial court improperly considered a factor inherent in the offense and expressed personal beliefs regarding drug cases. Related to sentencing, defendant also argues that counsel improperly disclosed aggravating information which deprived him of a fair sentencing hearing. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4       On or about November 29, 2022, the State charged defendant by three count information. Relevant to this appeal, count II alleged that on or about November 27, 2022, defendant committed the offense of unlawful possession of a controlled substance with intent to deliver, in that defendant knowingly and unlawfully possessed with intent to deliver more than 3 grams but less than 15 grams of a substance containing heroin/fentanyl, a controlled substance. 720 ILCS 570/401(c)(1) (West 2022). The information indicated that the substance contained fentanyl in violation of subsection (b-7).[1]

¶ 5       On July 19, 2023, the matter proceeded to a jury trial. The State first called Ivan Hernandez-Salazar. Hernandez worked for the State of Illinois in law enforcement, where he conducted home visits to "check on specific people in the homes or places where they're living." On November 27, 2022, Hernandez and his partner, Danielle Corley, conducted a home visit for defendant. Defendant's brother answered the door and advised Hernandez that defendant was sleeping. Defendant's brother took Hernandez and his partner to defendant's room. Defendant's brother opened defendant's bedroom door and turned on the lights to the bedroom. Hernandez observed defendant sleeping on a pillow. Hernandez observed a "medium-sized plastic bag and what

---

[1]We note that there appears to be a scrivener's error in the information, wherein the information alleges that defendant violated subsection 401(b-7). The information should reflect that defendant violated section 401(b-1) of the Illinois Controlled Substances Act (720 ILCS 570/401(b-1) (West 2022)). Section 401(b-1) states: "[W]hen the substance containing the controlled substance contains any amount of fentanyl, 3 years shall be added to the term of imprisonment imposed by the court, and the maximum sentence for the offense shall be increased by 3 years." *Id.*

2

appeared to be the defendant's IDs." Hernandez believed the bag contained suspected drugs. Hernandez instructed his partner to handcuff defendant, and Hernandez called the police department. Hernandez testified that Officer Christopher Skalon arrived on-scene. Upon law enforcement arrival, Hernandez searched the pillow in defendant's room. Hernandez recovered a "bundle of money" inside the pillow that defendant was asleep on.

¶ 6    Officer Christopher Skalon next testified. On November 27, 2022, Officer Skalon responded to the home of defendant in Decatur, Illinois. Officer Skalon utilized his body camera during the investigation. The State moved to admit and publish People's Exhibit 1, the body camera footage from Officer Skalon. The State also moved to admit and publish People's Group Exhibit 2, photographs of defendant's identification cards, cash, and a plastic bag of suspected narcotics. Officers recovered a bag of cannabis, two digital scales, another plastic bag of suspected narcotics, multiple empty plastic bags, a prescription bottle with defendant's name, boxes of sandwich bags, and cash totaling at least $1,400 in defendant's pillow.

¶ 7    Aaron Roemer, a forensic scientist for the Illinois State Police, next testified. The parties stipulated that Roemer was an expert in the area of forensic chemical analysis for drugs. Roemer testified that he received nine items for drug analysis. Per lab policy, Roemer tested only four items of suspected heroin. All four items contained both heroin and fentanyl with a total weight of 3.3 grams.

¶ 8    Jeff Hockaday, a detective with the Decatur Police Department, testified that he was part of the street crimes unit focused on drug and firearms investigations. The parties stipulated Detective Hockaday as an expert in illegal narcotics sales and distribution. Detective Hockaday testified that the average "street price" for heroin was approximately $100 to $150 per gram. He testified that often heroin was mixed with fentanyl "as a way to make more money." Detective

Hockaday testified that fentanyl is "cheaper" than heroin but has a "similar type of effect[ ]" on the human body. However, Detective Hockaday testified that fentanyl is "actually now even more deadly than heroin."

¶ 9    Detective Hockaday testified that in order to consider whether a drug is for personal use versus sale, he considers the amount of the narcotic found, whether scales or packaging are also found, and whether "U.S. currency" is recovered. Detective Hockaday testified that in defendant's case, defendant had over $1,400 in currency in his possession, two digital scales, multiple boxes of sandwich bags, Ziploc-style bags, and "multiple dosage units of something that field test[ed] positive for an illicit narcotic." Detective Hockaday concluded that based on the totality of the circumstances, the narcotics in defendant's possession were "for sale." Detective Hockaday based this on "the amount of packages, which were all separate, the money, the scales, the packaging," to conclude that "without a doubt" the items were "for sale."

¶ 10    The State rested. Defendant testified on his own behalf. Defendant testified that he was convicted on April 25, 2012, for aggravated stalking. He was also convicted on July 30, 2013, for possession of a weapon by a felon. He was released from the department of corrections on October 7, 2022. Defendant testified that he received $2,424.64 from a "trust fund account" for his release and a "family pickup of the money" that he had. Defendant testified that he cashed the check. He testified that he spent some of the money on clothes, and he paid a babysitter. He "hid" the remainder of the money in his brother's room. Defendant testified that this was the money found in his pillow.

¶ 11    Defendant testified that he lived at his cousin's home following his release from prison. Defendant's cousin, his cousin's girlfriend, his brother, and his brother's girlfriend, all resided in

4

the home. Defendant testified that he slept in the living room. Defendant's brother slept in the "back bedroom."

¶ 12     On the date of the incident, defendant was ill from drinking the night before. He asked his brother, Antwan, whether he could lie in his room. Defendant went into the bedroom, "put that money, along with my identification, on the windowsill." Defendant took his pillow from the living room to the back bedroom and went to sleep. Defendant denied ever seeing any of the drugs that were found. Defendant testified that the drugs did not belong to him. Following defendant's testimony, the defense rested.

¶ 13     On rebuttal, the State called Danielle Corley, a senior parole agent for the Illinois Department of Corrections. Following defendant's release from prison, Corley went to Lemontay Bragg's home to meet with defendant's "host" and identify where defendant's home would be. Corley went to the residence and spoke with defendant in person. Corley testified that defendant wore a GPS monitoring ankle bracelet, which required charging. Corley testified that the charging device for the ankle bracelet was in defendant's room. Defendant kept personal property in the bedroom of the house, including his clothing and commissary from the prison. Defendant showed Corley his bedroom. Corley testified that the bedroom defendant showed her was the same room in which she found him sleeping next to the plastic bags containing narcotics on November 27, 2022.

¶ 14     Following the reading of the jury instructions and deliberations, on July 20, 2023, the jury found defendant guilty of possession of a controlled substance (heroin) and that the substance contained fentanyl.

¶ 15     Defendant filed a posttrial motion. Relevant to this appeal, defendant argued that the evidence was insufficient to find him guilty beyond a reasonable doubt where the State failed to

establish that defendant possessed the controlled substance. Specifically, defendant argued that the trial court "allowed evidence of other substances alleged by the State to be illegal narcotics but not tested by the lab." Defendant argued that additional "baggies" "were argued by the State to support the element of intent to deliver but were not proven to be illegal narcotics." Additionally, defendant argued that the court "allowed evidence of packaging materials and digital scales without the State establishing where these items were found and by whom." Defendant also argued that the State showed the jury the items without laying a foundation for their admission.

¶ 16 On September 7, 2023, the trial court considered defendant's posttrial motion. Defense counsel stood on her motion. The trial court denied the motion, noting that there was evidence to prove defendant guilty beyond a reasonable doubt. The court moved on to sentencing. Defendant's sentencing range was four to fifteen years, plus three years for the fentanyl enhancement, with one year of supervised release. Thus, defendant was eligible for a sentence of 7 to 18 years, served at 50%.

¶ 17 The State argued that defendant was on parole when the offense occurred. Defendant had only been released from DOC for approximately three months, and he "started basically backsliding into his old lifestyle." The State argued that this constituted a dangerous crime, where heroin is "highly addictive" and fentanyl is "lethal." The State noted that defendant had an extensive criminal history and was "in and out of prison his whole life."

¶ 18 Defense counsel argued that defendant was an addict and used heroin and fentanyl without treatment. Defense counsel argued that this was a "nonviolent crime." The following exchange occurred:

> [Defense counsel]: However, we're not talking about physical violence or threat of violence in the community, unlike the gun charge, which was the most recent matter for which he was incarcerated.

THE COURT: He managed to get himself 22 years back in 2011. That must have been no small feat.

[Defense counsel]: Correct. And I think they were concurrent but.

THE COURT: Do you think, Ms. Moorehead? I'm not certain about that.

[Defense counsel]: It may not be, Judge. I'm.

THE COURT: Because 22 divided by 2 is 11. You take a little good time off of that for administrative matters and so on, and that gets him out in about 22 sometimes, which I think was the situation here.

[Defense Counsel]: That may be true, Judge. I went to law school so I didn't have to do math, so I apologize.

THE COURT: Well, I may seem upset, but it must have been somebody, Ms. Moorehead. Okay. I'm listening. I'm sorry.

[Defense Counsel]: No, I understand, and, again, those were violent offenses. Those were offenses that involved allegations of violence to a spouse, as well as the possession of a weapon, which obviously is fraught with difficulty.

¶ 19    Following argument from the parties, the trial court noted that defendant "stands convicted of a Class 1 for selling heroin that also contained Fentanyl, and as [the State] points out, Fentanyl, if not used properly or overused, can be very, very fatal." However, the court noted that this was "not any type of large drug operation." The court recognized that defendant's "addictions have apparently never been addressed." However, the court noted that defendant had a significant criminal history, was on parole at the time of the offense, and "perjured himself during the course of this trial." The court stated that defendant failed to take acceptance of responsibility.

¶ 20    The court noted that it considered the facts of the case, the factors in aggravation and mitigation, and the presentence investigation report. The court ultimately concluded that a minimum sentence was not appropriate because defendant "just did over 20 years and got out and got back on the street and immediately did the same thing again." The court ultimately sentenced defendant to 14 years, 11 years for possession with intent to deliver, with three more years for the

fentanyl enhancement. The court recommended defendant for substance abuse treatment in the Illinois Department of Corrections (IDOC).

¶ 21    Defendant filed a motion to reconsider sentence, arguing that his sentence was excessive where (1) the underlying offense was a non-violent offense; (2) there was no evidence that defendant sold the substances, only that he possessed them with intent to deliver to another; (3) intent to deliver was shown by the quantity of the substances and the way in which they were packaged; and (4) defendant was an addict in need of treatment. Defendant also argued that the enhancement for the presence of fentanyl violates the Illinois Constitution "as a disparate sentence." Specifically, defendant argued that the statutes provide for greater punishment for a mixture of heroin and fentanyl than it does for only fentanyl, and as such, violates the Illinois Constitution Article 1, Section 11. On September 15, the trial court held a hearing on the motion to reconsider. The court noted that defendant's motion was "well taken" but ultimately denied it. On September 20, 2023, defendant filed a timely notice of appeal.

¶ 22                                    II. ANALYSIS

¶ 23    Defendant raises two overarching arguments on appeal. First, he argues that this court should vacate the fentanyl sentencing enhancement, because the prosecution failed to prove beyond a reasonable doubt that defendant knew the controlled substance he was convicted of unlawfully possessing contained fentanyl. Second, he contends that this court should remand for resentencing where the trial court improperly considered a factor inherent in the offense and expressed personal beliefs regarding drug cases. Related to sentencing, defendant also argues that counsel improperly disclosed aggravating information which deprived him of a fair sentencing hearing. We consider each argument in turn.

8

¶ 24                              A. Sufficiency of the Evidence

¶ 25    First, defendant argues that this court should vacate his three year fentanyl sentencing enhancement, because the prosecution failed to prove beyond a reasonable doubt that defendant knew the controlled substance he was convicted of unlawfully possessing contained fentanyl. In support thereof, defendant contends that in order for the enhancement to be imposed, the State had to prove beyond a reasonable doubt that defendant knew that the heroin he possessed contained fentanyl. In response, the State argues that the fentanyl sentencing enhancement does not require proof beyond a reasonable doubt that defendant knowingly possessed fentanyl with the intent to deliver. We agree with the State.

¶ 26    In the case before us, the jury was instructed pursuant to Illinois Pattern Jury Instructions, Criminal, No. 17.17 (hereafter IPI Criminal No. 17.17) that "[a] person commits the offense of possession with intent to deliver a controlled substances when he knowingly possesses with intent to deliver a substance containing a controlled substance and the substance containing the controlled substance weighs three grams or more." The jury received Illinois Pattern Jury Instruction, Criminal, No. 17.18 (hereafter IPI Criminal No. 17.18), which indicated that the State must prove:

> "First Proposition: That the defendant knowingly possessed with intent to deliver a substance containing heroin, a controlled substance; and
>
> Second Proposition: That the weight of the substance containing the controlled substance was three grams or more."

Finally, the jury received State's Instruction 16, a non-IPI instruction, which stated that the State must prove that "defendant possessed with intent to deliver a controlled substance (heroin), and that same substance also contained any amount of fentanyl."

9

¶ 27    When reviewing a challenge to the sufficiency of the evidence, "the question is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from the facts presented at trial. *Id*. "In reviewing the evidence, this court will not retry the defendant, nor will we substitute our judgment for that of the trier of fact." *Id*. A defendant's conviction will be reversed only when the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of his guilt. *People v. Newton*, 2018 IL 122958, ¶ 24.

¶ 28    Possession may be actual or constructive; to prove constructive possession, the State must establish beyond a reasonable doubt that "defendant had knowledge of the presence of the contraband and exercised 'immediate and exclusive' control over the area where the contraband was discovered." *People v. Terrell*, 2017 IL App (1st) 142726, ¶ 18 (quoting *People v. Tates*, 2016 IL App (1st) 140619, ¶ 19). To establish possession with intent to deliver, the State must establish beyond a reasonable doubt that defendant knew of the drugs, they were in his immediate possession or control, and he intended to deliver them. *People v. Robinson*, 167 Ill. 2d 397, 407 (1995).

¶ 29    Knowledge may be demonstrated with evidence of the defendant's acts, declarations or conduct from which it can be fairly inferred that he knew the drugs existed where they were found. *People v. Maldonado*, 2015 IL App (1st) 131874, ¶ 40. Possession may be proven even where possession is joint or where other people have access to the area where the drugs were found. *Id.* ¶ 43. To determine whether possession is with the intent to deliver, the court considers the following factors as probative of intent: the quantity of drugs and whether it is too large for

10

personal consumption; high purity of the drugs; weapon possession; possession of police scanners, beepers or cell phones; possession of large amounts of cash; possession of drug paraphernalia; and the manner in which the drugs are packaged. *Robinson*, 167 Ill. 2d at 408.

¶ 30    On appeal, this court must determine if, "in light of the record, a fact finder could reasonably accept the testimony as true beyond a reasonable doubt." *People v. Cunningham*, 212 Ill. 2d 274, 279 (2004). We do not, however, retry a defendant. *Id.* at 279-80.

¶ 31    In the case before us, the State's evidence established that the drugs and defendant's identification card were on defendant's bed, where he was asleep. The State's evidence further established that defendant kept personal possessions in the room in which he was asleep, despite defendant's testimony that he did not have a bedroom in the home. Therefore, the State produced ample evidence of possession.

¶ 32    Moreover, the State established that defendant possessed the narcotics with an intent to deliver. The State proved that the narcotics were in a quantity and packaging consistent with delivery. The State offered evidence that the quantity exceeded reasonable personal use. Evidence of drug paraphernalia was also present in defendant's constructive possession. Defendant also had a large sum of cash in mostly $20 increments, additional packaging in the form of baggies, and scales, all indicia of an intent to deliver. Therefore, viewing the evidence in the light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that defendant possessed narcotics with intent to deliver the narcotics.

¶ 33    Turning to the issue of whether the State must prove "knowledge" that the narcotic contained fentanyl, defendant acknowledges that this issue is forfeited, and he seeks review under the first prong of plain error. Plain error review "is a narrow and limited exception" to general rules of forfeiture. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). The first step in determining

11

whether plain error review is available is determining whether "a clear or obvious error occurred."
*Id.* The defendant bears the burden of persuasion. *Id.*

¶ 34    In support of his position, defendant contends that the failure to prove this "element of the offense", that defendant knew that the substance contained fentanyl, violates the principle articulated in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. The State responds that defendant was found, beyond a reasonable doubt, to have knowingly possessed heroin, and that the prosecution also proved, beyond a reasonable doubt, that the substance containing heroin also contained fentanyl. For this reason, the State argues that the three-year sentencing enhancement applies. We agree with the State.

¶ 35    We find the decision by our colleagues in the First District in *People v. Graves*, 2022 IL App (1st) 192221-U, instructive. In *Graves*, the defendant was found guilty of delivery of a controlled substance containing heroin and fentanyl. *Id.* ¶ 2. On appeal, the defendant raised the same issue that is raised in this court: that by failing to prove beyond a reasonable doubt that the defendant knew that the heroin substance also contained fentanyl, the State failed to prove an "essential element" of the sentencing enhancement. *Id.* ¶ 30. The *Graves* court found that the State did not have to prove that the defendant knew that the substance he sold contained fentanyl. *Id.* ¶ 34. In support of its conclusion, the *Graves* court relied upon *People v. Brooks*, 271 Ill. App. 3d 570, 572-75 (1995) (the State was not required to prove that the defendant knew the offense of delivery of a controlled substance was committed within 1,000 feet of property owned by a public housing agency; the proximity of the property was an enhancing factor and not an element of the

12

offense); and *People v. Pacheco*, 281 Ill. App. 3d 179, 187-88 (1996) (the State was required to prove the substantive elements of the offense of unlawful delivery of a controlled substance as well as enhancing factors including the proximity of the school, but "was not required to prove that defendant knew or was aware of the proximity or distance of the school from the area where the offense was committed"). *Id.* We agree with our colleagues in *Graves*, and we decline to depart from their reasoning.

¶ 36     Further support for our conclusion is found in the plain language of the fentanyl enhancement provision (720 ILCS 570/401(b-1) (West 2022)), which does not contain any knowledge requirement. Section 401(b-1) states: "[W]hen the substance containing the controlled substance contains any amount of fentanyl, 3 years shall be added to the term of imprisonment imposed by the court, and the maximum sentence for the offense shall be increased by 3 years." *Id*. Furthermore, and as noted by the State, where the legislature includes a *mens rea* element in one statutory provision but omits it in another, courts presume the omission was intentional and that the provision does not include a mental state requirement. See *People v. O'Brien*, 197 Ill. 2d 88, 95 (2001). Based on a plain reading of the statute, the sentencing enhancement statute does not require a mental state. In order for the enhancement to apply, the State need only prove the presence of fentanyl. It is not required to prove defendant knew the substance contained fentanyl.

¶ 37     Based on the record before us, the State proved, beyond a reasonable doubt, that defendant knowingly possessed, with the intent to deliver, a controlled substance. The State also proved, beyond a reasonable doubt, the fact that the controlled substance contained not only heroin, but fentanyl as well. Because no error occurred, the defendant's argument for review under principles of plain error fails. See, *e.g.*, *Hillier*, 237 Ill. 2d at 545 (first step in determining whether plain error review is available is determining whether "a clear or obvious error occurred."). We therefore

13

affirm defendant's conviction for unlawful possession of a controlled substance with intent to deliver and the application of the sentencing enhancement.

¶ 38                                    B. Sentencing

¶ 39    Defendant argues that this court should remand for resentencing due to alleged sentencing errors. Specifically, defendant complains of (1) the trial court's improper consideration of a factor inherent in the offense, (2) the trial court's expression of personal beliefs regarding drug cases, and (3) defense counsel's improper disclosure of aggravating information at the sentencing hearing. Taken together, defendant argues that he was denied a fair sentencing hearing and received an excessive sentence. In response, the State argues that the trial court properly considered the factors in aggravation and mitigation before imposing a sentence. The State also argues that defendant received the effective assistance of counsel during sentencing. We agree with the State.

¶ 40    Initially, we note that defendant acknowledged that he failed to preserve the sentencing issues he raises on appeal. As such, he requests that we review them under the second prong of plain error. For the following reasons, we find that the trial court did not consider a factor inherent in the offense, nor did the court express any personal beliefs about drug cases. Because no error occurred, the defendant's argument for review under principles of plain error fails. See, *e.g.*, *Hillier*, 237 Ill. 2d at 545 (first step in determining whether plain error review is available is determining whether "a clear or obvious error occurred.").

¶ 41    Turning to the merits, when determining a sentence, "the trial court has broad discretionary powers." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). We give substantial deference to the trial court because "the trial judge, having observed the defendant and the proceedings, is in a much better position to consider factors such as the defendant's credibility, demeanor, moral character, mentality, environment, habits, and age." *People v. Snyder*, 2011 IL 111382, ¶ 36. Accordingly, a

14

sentence will not be disturbed absent an abuse of discretion. *Stacey*, 193 Ill. 2d at 209-10; *People v. Willis*, 2013 IL App (1st) 110233, ¶ 122. An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Johnson*, 347 Ill. App. 3d 570, 574 (2004).

¶ 42    First, we consider whether the trial court considered improper aggravating factors that increased defendant's sentence. Defendant contends that the court improperly considered the harm that delivering fentanyl poses to the community as an aggravating factor, when the harm is inherent in the fentanyl enhancement. Specifically, defendant points to the court's statement that "[f]entanyl, if not used properly or overused, can be very, very fatal." The court later stated that defendant "had this, like, wad of drugs he was selling, which, again, did contain fentanyl, which is a very dangerous product." The State disagrees, arguing that the court did not improperly consider the dangers of fentanyl in aggravation.

¶ 43    A factor inherent in the offense for which a defendant has been convicted cannot also be used as an aggravating factor in determining his sentence. *People v. Phelps*, 211 Ill. 2d 1, 11 (2004). The rationale for this prohibition against "double enhancement" is premised on the assumption that our General Assembly considered the factors inherent in the offense in designating the range of punishment. *Id.* at 12. However, the rule that a court may not consider a factor inherent in the offense should not be applied rigidly because sound public policy demands that a sentence be varied according to the circumstances of the offense. *People v. Spicer*, 379 Ill. App. 3d 441, 468 (2007). In determining whether the trial court based its sentence on proper aggravating and mitigating factors, a reviewing court should consider the record as a whole rather than focusing on a few words or statements by the trial court. *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009).

15

¶ 44 In considering the record as a whole, we agree with the State that the trial court made these comments as part of a broader discussion of the specifics of defendant's offense. The trial court did not make these comments as factors in aggravation. Rather, the court expressly noted that this was "not any type of large drug operation." The court recognized that defendant's "addictions have apparently never been addressed." However, the court noted that defendant had a significant criminal history, was on parole at the time of the offense, and "perjured himself during the course of this trial." The court stated that defendant failed to take acceptance of responsibility.

¶ 45 The court noted that it considered the facts of the case, the factors in aggravation and mitigation, and the presentence investigation report. The court ultimately concluded that a minimum sentence was not appropriate because defendant "just did over 20 years and got out and got back on the street and immediately did the same thing again." The court ultimately sentenced defendant to 14 years, 11 years for possession with intent to deliver, with 3 more years for the fentanyl enhancement. The court recommended defendant for substance abuse treatment in the IDOC. We cannot say, based on the record as a whole, that the court improperly considered an inherent factor in aggravation.

¶ 46 Next, defendant contends that the trial court "improperly commented on his personal dislike of Class I drug cases." In support thereof, defendant argues that the judge expressed "feelings and personal 'hate' for Class I drug cases." The State disagrees, arguing that the trial court did not improperly communicate personal bias against Class 1 drug offenders.

¶ 47 Initially, we note that the trial court's comment was not made during defendant's sentencing hearing. Rather, the trial court's comment occurred on April 5, 2023, during a pretrial hearing. The following exchange occurred:

> [Defense Counsel]: He's in custody, Your Honor.

16

THE COURT: Show Ms. Moorehead is present for defendant who is in custody.

[Defense Counsel]: I believe we're still waiting for labs on him, drug labs.

THE COURT: Again, I don't mean to say—just—but I hate Class I drug cases. Is this the first pretrial?

JUDICIAL CLERK: It came out of prelim in December.

THE COURT: I guess we don't know what the substance is.

[Defense Counsel]: Correct. We suspect but we don't know.

Defendant argues that this "commentary on the judge's personal disfavor of the exact charge for which [defendant] was convicted was improper and therefore deprived [defendant] of a fair sentencing hearing." As properly noted by the State, "These comments occurred months before the sentencing hearing and had no relationship to the court's considerations at sentencing." We agree with the State and cannot find that a comment made related to scheduling and forensic testing negatively impacted defendant's sentencing hearing.

¶ 48   Next, defendant contends that his counsel was ineffective by disclosing to the court the "extremely aggravating nature" of defendant's prior conviction during sentencing. In his brief, defendant contends that "defense counsel made matters worse by disclosing damaging aggravating evidence." Specifically, defendant argues that the trial court was "unaware of the underlying facts surrounding [defendant's] 2012 conviction for aggravated stalking and 2013 conviction for felon in possession of a weapon." Defendant argues that the facts were "highly prejudicial as they revealed violence to a spouse." The State disagrees, arguing that defendant failed to demonstrate prejudice from his counsel's purported ineffectiveness during the sentencing hearing. We agree with the State.

17

¶ 49    Claims that counsel provided ineffective assistance of counsel are evaluated under the familiar two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Poole*, 2012 IL App (4th) 101017, ¶ 8. To establish that counsel was ineffective, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced defendant. *People v. West*, 187 Ill. 2d 418, 432 (1999). Since both prongs of the Strickland test must be satisfied, a finding of ineffective assistance of counsel is precluded if a defendant fails to satisfy one of the prongs. *Poole*, 2012 IL App (4th) 101017, ¶ 8. To meet the prejudice prong, defendant must demonstrate prejudice by showing a reasonable probability that, but for counsel's deficiencies, the result of the proceeding would have been different. *People v. Lucious*, 2016 IL App (1st) 141127, ¶ 45.

¶ 50    In the case before us, defendant was not prejudiced by counsel's comments, where the trial court was already aware of defendant's criminal history. During trial, when defendant testified, defense counsel adduced that defendant was convicted in 2012 for aggravated stalking and a 2013 conviction for possession of a weapon by a felon. During the sentencing hearing, the State noted defendant's extensive criminal history, including aggravated stalking "which is dangerous to the community." The State also argued that defendant had an extensive criminal history, including three prior intent to deliver and three prior unlawful use of weapon by felon charges.

¶ 51    Based on the evidence adduced at trial, in the presentence investigation report, and the argument of the parties, the trial court knew defendant had an extensive criminal history. The court specifically stated that defendant had "a terrible record" and "spent almost his entire adult life in prison." Notably, the trial court did not comment on domestic violence in rendering its sentence. In fact, the court noted that "if there was a gun involved or something like that" then a maximum sentence "would be appropriate." However, the court noted that a minimum sentence was not

18

appropriate, where defendant served a significant sentence "and got out and got back on the street and immediately did the same thing again." Ultimately, as noted above, the trial court based its decision on defendant's extensive criminal history, failure to take responsibility, and committing the present offense while on parole. The court did not base its sentencing decision on a single comment, taken in isolation, by defense counsel.

¶ 52    Finally, defendant argues that all of these errors are not insignificant, where defendant's 14-year sentence is "double the minimum allowable sentence." We disagree.

¶ 53    If a sentence falls within the statutory limits, it will not be overturned on appeal absent an abuse of discretion. *People v. Perruquet*, 68 Ill. 2d 149, 153 (1977); *People v. Stroup*, 397 Ill. App. 3d 271, 274 (2010). An abuse of discretion occurs only if a sentence greatly varies from the spirit and purpose of the law or where it is manifestly disproportionate to the nature of the offense. *Stacey*, 193 Ill. 2d at 210. A trial court is granted deference because it is generally in a superior position to weigh such factors as defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *People v. Streit*, 142 Ill. 2d 13, 19 (1991).

¶ 54    In this case, defendant faced a sentencing range of 7 to 18 years based on the fentanyl enhancement. See 720 ILCS 570/401(b-1)(West 2022). Defendant's 14 year sentence fell squarely within that range. Here, the record reflects that the court considered the relevant factors in aggravation and mitigation, the specific facts of the case, and the presentence investigation report. The factors considered by the sentencing court provide a sufficient basis for the prison sentence imposed in this matter, and the court's sentence was within the statutory range of sentences permissible. For these reasons, under the facts and circumstances of this case, we do not find that defendant's sentence was excessive or that the court abused its discretion in sentencing defendant.

¶ 55                    III. CONCLUSION

¶ 56    For the foregoing reasons, defendant's Macon County conviction and sentence for unlawful possession of a controlled substance with intent to deliver is affirmed.


¶ 57    Affirmed.